1

2

3

4          UNITED STATES DISTRICT COURT

5              DISTRICT OF NEVADA

6                    * * *

7   IGT, a Nevada corporation; and ACRES           Case No. 2:22-cv-02134-RFB-EJY
    GAMING INCORPORATED, a Nevada
8   corporation,                                    **ORDER**

9                    Plaintiff,

10          v.

11  JOHN F. ACRES, an individual,

12                   Defendants.

13

14  JOHN F. ACRES, an individual,

15                   Counterclaimant,

16          v.

17  IGT and ACRES GAMING INCORPORATED,

18                   Counter-defendants.

19

20  **I.      INTRODUCTION**

21          Before the Court are seven motions: Plaintiffs and Counter-defendants IGT and Acres

22  Gaming Incorporated ("AGI")  (collectively, "Plaintiffs")'s Motion to Remand (ECF No. 10),

23  Defendant and Counterclaimant John F. Acres ("Defendant")'s Motion to Consolidate (ECF No.

24  12), Defendant's Motion for Leave to File Supplemental Reply in support of his Motion to

25  Consolidate (ECF No. 19), Plaintiffs' Motion to Amend the Complaint (ECF No. 22), Plaintiffs'

26  Motion to Dismiss Defendant's Answer by Plaintiffs, Plaintiffs' Motion to Strike Defendant's

27  Answer (ECF No. 23), Defendant's Motion for Judgment on the Pleadings (ECF No. 28).  For the

28  reasons stated below, the Court grants Plaintiffs' Motion to Remand and dismisses all other

1    pending motions as moot.

2

3         **II.     PROCEDURAL BACKGROUND**

4         On October 25, 2021, Acres 4.0 (a company Defendant owns) filed a complaint in <u>Acres</u>

5    <u>4.0, Inc. v. IGT</u>, in this Court: Case No. 2:21-cv-01962 ("Original Case").  Acres 4.0 sought

6    declaratory relief establishing that it had not infringed on various Patents, including the '263

7    Patent, or, in the alternative that the 263 Patent was invalid.  On February 28, 2022, IGT filed an

8    answer and counterclaim in the Original Case.  In its counterclaim, IGT named Mr. Acres as a

9    counter-defendant and alleged that Acres 4.0 and John F. Acres infringed the '263 Patent. On

10   August 3, 2022, Acres 4.0 petitioned the United States Patent and Trademark Office ("USPTO")

11   to reexamine all claims of the '263 Patent. On October 25, 2022, this Court, upon Acres 4.0's

12   motion, stayed the Original Case pending the USPTO's reexamination of, among others, the '263

13   Patent.

14        On December 19, 2022, Plaintiffs commenced the instant case by filing a Complaint

15   against Mr. Acres in the Eighth Judicial District Court, Clark County, Nevada (Case No. A-22-

16   862804-B).  ECF No. 1-1.

17        On December 22, 2022, Mr. Acres filed a Petition of Removal, pursuant to 28 U.S.C. §

18   1338(b). On January 11, 2023, Mr. Acres filed a Notice of Related Cases, alerting the Court to the

19   Original Case.  ECF No. 7.  On January 11, 2023, Mr. Acres alone filed a Statement Regarding

20   Removal.  ECF No. 8.  On January 12, 2023, Plaintiffs filed a Response to the Notice of Related

21   Cases.  ECF No. 9.  Plaintiffs also filed a Motion to Remand.  ECF No. 10. On January 25, 2023,

22   Mr. Acres filed a Motion to Consolidate this case with the Original Case.  ECF No. 12. On January

23   26, 2023, the parties filed a Joint Status Report.  ECF No. 13.  On February 8, 2023, Plaintiffs filed

24   a Response to the Motion to Consolidate.  ECF No. 16.  On February 15, 2023, Mr. Acres filed a

25   Reply in support of his Motion to Consolidate.  ECF No. 18. On February 16, 2023, Mr. Acres

26   filed a Motion for Leave to file a Surreply in support of his Motion to Consolidate.  ECF No. 19.

27   On February 17, 2023, Plaintiffs filed a Reply in support of their Motion to Remand.  ECF No. 21.

28        On February 17, 2023, Plaintiffs filed a Motion to Amend their Complaint.  ECF No. 22.

On February 21, 2023, Mr. Acres filed an Answer to the Complaint.  ECF No. 23.  The Answer contained affirmative defenses and counterclaims.  Id.  On March 14, 2023, Plaintiffs filed a Motion to Dismiss the counterclaims contained in Mr. Acres' Answer to the Complaint.  ECF No. 26.  The Motion was fully briefed on April 21, 2023.  ECF Nos. 38, 45. On March 14, 2023, Plaintiffs also filed a Motion to Strike the Answer entirely. ECF No. 27.  This Motion was fully briefed on April 21, 2023.  ECF Nos. 39, 46.  On March 21, 2023, Mr. Acres filed a Motion for Judgment on the Pleadings. ECF No. 28.  The Motion was fully briefed on April 21, 2023. ECF Nos. 35, 43.  On March 27, 2023, Mr. Acres filed a Motion to Stay Discovery.  ECF No. 31.  On April 5, 2023, the parties filed a proposed Discovery Plan and Scheduling Order.  ECF No. 34. On April 21, 2023, Mr. Acres filed a Motion to Seal Exhibits to his Motion for Judgment on the Pleadings (ECF No. 28).  ECF No. 41.  On April 21, 2023, the Court granted the Motion.  ECF No. 49. On May 18, 2023, the Court set a hearing for May 30, 2023, on the seven pending motions before the Court; the Motion to Stay Discovery (ECF No. 31) is properly before Magistrate Judge Elayna J. Youchah.  ECF No. 51.  At the hearing, the Court ordered the parties to file supplemental briefing by June 13, 2023, that addressed the scope of any legal determination related to patent law that would be required to address Plaintiffs' state law contract claims. ECF No. 59. The Court further required the parties to attach the relevant contracts to their submissions as separate exhibits. Id.  The parties complied with the Court's order.  ECF Nos. 56-58.

This order follows.


III.    FACTUAL ALLEGATIONS

Defendant Mr. Acres is an inventor and business owner who has operated for several decades in the fields of casino and gaming technology. Mr. Acres created his first casino technology business, Electronic Data Technologies, in 1981, and sold it in 1984 for $1 million. In 1986, he created a second business, called Mikohn, which he sold in 1989 for $6 million. Defendant Acres subsequently founded a third business, AGI. On or about July 1, 1996, Defendant Acres entered into an Employment Agreement with AGI, formally establishing certain terms and obligations of Defendant Acres' role as Chief Executive Officer of AGI (the "Employment

1    Agreement"). While operating AGI, Mr. Acres developed an invention for a "Method of

2    Implementing Cashless Play of Gaming Devices Interconnected by a Computer Network" (the

3    "Invention").

4           On October 11, 2000, in exchange for "good and valuable consideration," Mr. Acres

5    assigned and transferred to AGI the full and exclusive right, title, and interest to the Invention, and

6    any and all subsequent patent rights throughout the world (the "2000 Assignment"). On October

7    19, 2000, Mr. Acres applied for protection of the Invention with the U.S. Patent and Trademark

8    Office ("USPTO") as U.S. Patent Application No. 09/694,065.  Mr. Acres was the sole inventor

9    listed on the application for the Invention. As part of his application, Defendant Acres executed a

10   declaration, affirming his belief that he is the original, first, and sole inventor of the Invention. On

11   June 24, 2008, the USPTO issued U.S. Patent No. 7,390,263 for the Invention (the "'263 Patent").

12   While this patent application was under consideration by the USPTO, IGT entered into

13   negotiations to acquire AGI.

14          On or about June 29, 2003, International Game Technology—a nonparty corporation that

15   is the parent to IGT—and its wholly owned subsidiary NWAC Corp. entered into an Agreement

16   and Plan of Merger with AGI (the "2003 Merger"). Mr. Acres himself states that through this

17   transaction, he sold AGI to International Game Technology for $143 million dollars. As a result

18   of the 2003 Merger, AGI became a wholly owned subsidiary of International Game Technology

19   and continued to assume all of its rights and obligations, including those trailing rights under the

20   Employment Agreement.

21          On or about January 2, 2005, IGT and its sister company AGI, as part of a larger plan for

22   International Game Technology to integrate its subsidiaries, executed an Assignment and

23   Assumption of Agreements whereby the entire right, title and interest in the Invention and the

24   patent application that resulted in the '263 Patent (among other assets) were assigned and

25   transferred to IGT (the "2005 Assignment").

26          As a result of the 2003 Merger and the 2005 Assignment, IGT is the successor-in interest

27   to the Assignee under the 2000 Assignment. IGT holds all rights, title, and interest in the '263

28   Patent and the benefits of the promises made by Mr. Acres under the 2000 Assignment have inured

4

to IGT.

In 2009, Mr. Acres formed Acres 4.0, a Nevada corporation. In 2018, Mr. Acres formed Acres Manufacturing Company, a Washington corporation. Mr. Acres is the President, Secretary, Treasurer, Director, CEO and Founder of both Acres 4.0 and Acres Manufacturing Company, and fully owns both Acres 4.0 and Acres Manufacturing Company.

Unbeknownst to IGT, in or around 2010, Mr. Acres began developing a product titled Foundation™.  In or around 2021, IGT became aware that Mr. Acres, through Acres 4.0 and Acres Manufacturing Company, manufactures, uses, sells, and offers  Foundation™ for sale in the United States in a way that infringes the claims of the '263 Patent. Foundation™ is covered by the claims of the '263 Patent.

As the successor Assignee and owner of the '263 Patent, IGT has not licensed or otherwise granted permission for either Acres 4.0 or Acres Manufacturing Company to manufacture, use, sell, and offer for sale in the United States and/or import into the United States any product covered by the claims of the '263 Patent. Mr. Acres was aware of the existence and validity of his own patented invention. He was also aware that IGT was the successor Assignee and owner of the '263 Patent.  He is the named inventor of the '263 Patent. He is the founder and key employee of AGI. Upon information and belief, Acres 4.0 availed itself of Mr. Acres' knowledge of the claimed inventions to develop and market Foundation™ for manufacture, use, and sale in the United States. Following its discovery, IGT formally notified Mr. Acres and Acres 4.0 that it believed Foundation™ infringed upon the '263 Patent. On October 25, 2021, Mr. Acres—through Acres 4.0— filed a civil action in Federal Court, seeking, among other things, a declaratory judgment that Acres 4.0 does not infringe the '263 Patent: Acres 4.0 v. IGT, 2:21-cv-01962-GMN-BNW (D. Nev.). On August 3, 2022, Mr. Acres—through Acres 4.0—filed a third-party request for ex parte reexamination of the '263 Patent with the USPTO. The reexamination request asks the USPTO to find that the '263 Patent should not have been patented over prior art that Mr. Acres did not disclose. Mr. Acres' actions contravene both the express language and spirit of his obligations under the 2000 Assignment (the benefit of which has inured to IGT as successor-in-interest to the original Assignee to "do everything possible to aid Assignee, its successors and assigns to obtain

1    and enforce proper patent protection." His actions further constitute deceptive trade practices.

2

3        **IV.    LEGAL STANDARD**

4        Under 28 U.S.C. § 1332, a federal district court has "original jurisdiction of all civil actions

5    where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and

6    costs, and is between citizens of different States." 28 U.S.C. § 1332(a)(1).

7        When original jurisdiction exists under either 28 U.S.C. § 1331 or § 1332 but the matter

8    was filed in a state court, the matter may be removed to federal district court. 28 U.S.C. § 1441(b).

9    "If at any time before final judgment it appears that the district court lacks subject matter

10   jurisdiction," however, "the case shall be remanded." 28 U.S.C. § 1447(c).  Proper jurisdiction

11   under Section 1332 requires complete diversity, so each plaintiff must be diverse from each

12   defendant.  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553, 125 S. Ct. 2611, 162

13   L. Ed. 2d 502 (2005). A district court has "original jurisdiction of all civil actions arising under

14   the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

15       An action "arises under" federal law when "federal law creates the cause of action." Merrell

16   Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808, 106 S. Ct. 3229, 92 L. Ed. 2d 650 (1986). But

17   even where a claim finds its origins in state rather than federal law, the Supreme Court has

18   identified a "special and small category" of cases in which federal question jurisdiction still exists.

19   Empire Healthchoice Assurance, Inc., v. McVeigh, 547 U.S. 677, 699, 701, 126 S. Ct. 2121, 165

20   L. Ed. 2d 131 (2006). Federal jurisdiction over a state law claim will lie if a federal issue is: (1)

21   necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal

22   court without disrupting the federal-state balance approved by Congress. Grable & Sons Metal

23   Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 313-14, 125 S. Ct. 2363, 162 L. Ed. 2d 257

24   (2005).

25       Where all four Grable requirements are met, jurisdiction is proper because there is a

26   "serious federal interest in claiming the advantages thought to be inherent in a federal forum,"

27   which can be vindicated without disrupting Congress's intended division of labor between state

28   and federal courts. Id. at 313.  To protect the jurisdiction of state courts, removal jurisdiction should

1    be strictly construed in favor of remand. <u>Harris v. Bankers Life and Cas. Co.</u>, 425 F.3d 689, 698

2    (9th Cir. 2005). "Federal jurisdiction must be rejected if there is any doubt as to the right of

3    removal." <u>Gaus v. Miles</u>, 980 F.2d 564, 566 (9th Cir. 1992) (internal citation omitted). "Th[is]

4    strong presumption against removal jurisdiction means that the defendant always has the burden

5    of establishing that removal is proper." <u>Id</u>.

6

7        **V.    DISCUSSION**

8        Federal District Courts are courts of limited jurisdiction. As Mr. Acres has not satisfied his

9    burden of showing why Removal is appropriate, under <u>Grable</u>, the Court grants Plaintiffs' Motion

10   to Remand. 545 U.S. 308, 314; <u>Gunn v. Minton</u> 568 U.S. 251, 258 (2013); <u>see also</u> <u>City of Oakland</u>

11   <u>v. BP PLC</u>, 969 F.3d 895, 904-905 (9th Cir. 2020) (noting that all four <u>Grable</u> factors must be

12   established for original jurisdiction in the limited circumstances when the court looks beyond

13   plaintiff's complaint for jurisdictional facts).

14       As a preliminary matter, there is not complete diversity between the parties, as Mr. Acres

15   resides in Clark County, Nevada, and IGT is a Nevada Corporation.  Therefore, Mr. Acres bears

16   the burden of showing that the Court has original jurisdiction over this case and the claims

17   contained within it.  In undertaking this analysis, the court may only consider the pleadings filed

18   at the time of removal without reference to subsequent amendments.  <u>City of Oakland</u>, 969 F.3d

19   at 904.

20       Federal district courts have original jurisdiction over civil actions arising under the

21   Constitution, laws, or treaties of the United States.  28 U.S.C.S. § 1331. Additionally, 28 U.S.C.

22   §§ 1338 and 1454 give the district courts original jurisdiction over cases involving patents.  In his

23   Petition for Removal, Defendant asserts jurisdiction pursuant to 28 U.S.C. § 1338, which gives

24   federal district courts original jurisdiction over "[a]ny civil action arising under any Act of

25   Congress relating to patents, plant variety protection, copyrights and trademarks."  <u>See</u> <u>also</u> <u>Gunn</u>

26   <u>v. Minton</u>, 568 U.S. 251, 257 (2013) ("For cases falling within the patent-specific arising under

27   jurisdiction of § 1338(a) . . . Congress has not only provided for federal jurisdiction but also

28   eliminated state jurisdiction, decreeing that no State court shall have jurisdiction over any claim

7

for relief arising under any Act of Congress relating to patents.").

The operative question is whether this case arises under federal law relating to patents. Here, Plaintiffs raise no claims for relief under federal law in the traditional sense, i.e., there are no causes of action created by federal law as pled in the Complaint. "The [well-pleaded complaint] rule makes the plaintiff the master of the claim; [the plaintiff] may avoid federal jurisdiction by exclusive reliance on state law." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) (footnote omitted). Additionally, at the time he removed the matter, Mr. Acres had not answered the Complaint in state court; therefore, at the time of Removal, there were no compulsory counterclaims arising under the patent laws. See generally 28 U.S.C. § 1454 ("A civil action in which **any party** asserts a claim for relief arising under any Act of Congress relating to patents . . . may be removed to [federal] district court . . . .") (emphasis added).

Since Plaintiffs' complaint contains only state law claims, removal is proper only if Mr. Acres establishes that the four-part Grable test has been fully satisfied and Plaintiffs state law claims arise under federal law. For the reasons stated below, Mr. Acres has not carried his burden here.

### A. Whether Federal Issues Are "Necessarily Raised"

To trigger "arising under" jurisdiction, a federal issue must be necessarily raised. See Rivet v. Regions Bank of Louisiana, 522 U.S. 470, 472, 118 S. Ct. 921, 139 L. Ed. 2d 912 (1998) (explaining that "arising under" jurisdiction exists "where the vindication of a right under state law necessarily [turns] on some construction of federal law."); see also Grable, 545 U.S. at 314 ("'[F]ederal issue' [is not] a password opening federal courts to any state action embracing a point of federal law. Instead, the question is, does a state-law claim necessarily raise a stated federal issue . . . ."). A federal issue is necessarily raised if it is "basic," "necessary," "pivotal," "direct," or "essential" to the claim. Lippitt v. Raymond James Fin. Servs., Inc., 340 F.3d 1033, 1045 (9th Cir. 2003). The Court analyzes each of the Plaintiffs' claims which Defendant believe necessarily raise a question of federal law.

#### i. Breach of the 2000 Assignment

Plaintiff alleges that Mr. Acres breached the 2000 Assignment by breaching the "do

8

everything possible provision" in the Assignment when he (1) forced reexamination of the '263 Patent and (2) sought to limit the scope or invalidate the intellectual property that he transferred through the 2000 Assignment.

The 2000 Assignment is attached to the parties' supplemental filings. it assigns all rights flowing from Mr. Acres Invention—defined as "A METHOD OF IMPLEMETING CASHLESS PLAY OF GAMING DEVICES INTERCONNECTED BY A COMPUTER NETWORK"—from Mr. Acres to Plaintiff AGI.  The Assignment states in relevant part that it applies to "the invention, patent application, patent rights throughout the world, including foreign patent priority rights; said invention, application and letters patent in this or any foreign country, and all divisions, continuations, reissues and extensions thereof, to be held and enjoyed by Assignee [i.e.,  Plaintiff AGI], for its own use and benefit and for its successors and assigns to the full end of the term for much letter patent may be granted in this or any foreign country, as fully and entirely as the same would have been held by Assignor had this agreement and sale not been made. . . ."  The Assignment further states that Mr. Acres, as "Assignor" agrees to "communicate to Assignee, testify in any legal proceeding, sign all lawful papers, execute all divisional, continuing and reissue applications, make all rightful oaths, and do everything possible to aid Assignee [i.e. Plaintiff AGI], its successors and assigns to obtain and enforce proper patent protection for said invention in this or any foreign country."

Mr. Acres argues this cause of action requires resolution of a patent law question; this is because when an inventor assigns a pending patent application and not an issued patent, the application of assignor estoppel is not straightforward. Similarly, whether Mr. Acres breached the 2000 Assignment depends on the scope of the claims that were included in the '263 patent, as issued, versus the scope of the claims when the 2000 Assignment was executed and when the 2000 Assignment was transferred to IGT. Determining whether Mr. Acres breach his obligation to obtain and enforce proper patent protection for the "invention" will require the Court to determine the scope of the claims issuing as part of the '263 patent and compare that to the scope of what Mr. Acres, in 2000, assigned to AGI, and what AGI later assigned to IGT.

Plaintiff responds that assignor estoppel is not a "necessary element" to their state law

1    claims, see Semiconductor Energy Lab'y Co. v. Nagata, 706 F.3d 1365, 1368, 1371 (Fed. Cir.

2    2013). Although a change in patent claims can "remove the rationale for applying assignor

3    estoppel," Minerva Surgical, Inc. v. Hologic, Inc., 141 S. Ct. 2298, 2310 (2021), no such limitation

4    applies to a breach of contract claim.

5        The Court agrees.  Here, regardless of the '263 patent's validity, and regardless of whether

6    an intervening change in patent law affected the nature of the invention assigned to AGI, Mr. Acres

7    agreed to do "everything possible" to protect the invention and AGI's rights therein. The

8    Assignment does not suggest any way a limitation on Acres' obligation to support Plaintiff's

9    exploitation of the Patent (or Patent Application). No such distinction is referenced or created.

10   Therefore, whether Mr. Acres breached that provision of the 2000 Assignment does not "really

11   and substantially involve a dispute or controversy resecting the validity, construction or effect of

12   [federal] law." Grable, 545 U.S. at 313.  Plaintiffs' claims relating to the 2000 Assignment do not

13   necessarily raise issues of federal patent law.

14               ii.    **Breach of the 1996 Employment Agreement**

15       Mr. Acres' 1996 Employment Agreement ("Employment Agreement") is attached to the

16   parties' stipulated supplemental filings.  The Employment Agreement creates obligations by Mr.

17   Acres to assist his Employer (Plaintiff AGI) in every way in obtaining and/or enforcement of its

18   Intellectual Property, regardless of patentability. The Agreement states, in relevant part, that Mr.

19   Acres agreed "during and subsequent to" his employment with Plaintiff AGI, to assist AGI "in

20   every lawful way including but not limited to testifying and/or otherwise supporting [AGI] in the

21   obtaining and/or enforcement of its Intellectual Property . . . to obtain for the benefit of [AGI]

22   patents trademarks, copyrights, design protection and similar legal protections of Intellectual

23   Property in any and all countries, irrespective of whether Employee believes such Intellectual

24   Property to be patentable . . . ."

25       Plaintiffs allege that Mr. Acres violated the "assist Employer" provision of the

26   Employment Agreement when he sought reexamination of the '263 Patent and limited the scope

27   of the protected intellectual property that he transferred to Plaintiff AGI. Plaintiffs further allege

28   that "[b]y agreeing to assist Employer 'in every lawful way . . . in the obtaining and/or enforcement

10

1    of its Intellectual Property . . . irrespective of whether Employee believes such Intellectual Property

2    to be patentable,' the plain spirit and purpose of the Employment Agreement includes an obligation

3    to refrain from taking action, or allowing action to occur when preventable, that would render that

4    intellectual property to be invalid or unenforceable."

5          Mr. Acres chiefly argues that this claim raises a federal issue because (1) whether the '263

6    patent was valid would determine the scope of Plaintiffs' damages and (2) the plain language of

7    the complaint puts validity in issue. Plaintiff responds that the Employment Agreement

8    unambiguously defines "intellectual property," which includes "discoveries, inventions, ideas,

9    etc., whether or not patentable . . . ." Furthermore, pursuant to the Employment Agreement, Mr.

10   Acres was obliged to assist Plaintiff AGI in every way in obtaining and/or enforcement of its

11   intellectual property, "irrespective of whether [Mr. Acres] believe[d] such Intellectual Property to

12   be patentable, subject to trademark protection, copyrightable or otherwise protectable." Plaintiff

13   asserts that this is an unambiguous contract provision, and the Court should reject any attempt by

14   Mr. Acres to argue that there is an implicit agreement between the parties that runs counter to the

15   explicit language of the written agreement.

16         The Court again agrees with Plaintiff. The Court finds that the language of the Employment

17   Agreement creates obligations irrespective of the patentability of the underlying intellectual

18   property or Mr. Acres' beliefs about patentability.  While it is true that Plaintiffs' damages claim

19   may possibly (but not necessarily) be affected by this Court's determination regarding the '263

20   patent, this by no means makes it a necessary element of Plaintiffs' cause of action.  The Court

21   finds that whether Mr. Acres breached the Employment Agreement is a legal question that turns

22   on Nevada law. There is no federal question "necessarily raised" in this claim, since, independent

23   of any patent infringement, Mr. Acres could have violated the agreement, based on the allegations

24   pled in the Complaint. See, e.g., Lippitt v. Raymond James Fin. Servs., Inc., 340 F.3d 1033, 1045

25   (9th Cir. 2003) (finding no arising under jurisdiction in part because the underlying state law claim

26   did not "require a court to make an independent assessment about whether [d]efendants violated

27   [NYSE] rules or regulations" and because the plaintiff's "right to relief does not depend on the

28   resolution of a substantial, disputed federal question.").

11

iii.   **Deceptive Trade Practices Act Claim**

Plaintiffs allege that "Defendant Acres has engaged in deceptive trade practices because he assigned the Invention for value, while pledging to 'do everything possible to aid Assignee, its successors and assigns to obtain and enforce proper patent protection for said invention in this or any foreign country,' but subsequently has asserted that the '263 Patent should be invalidated."

Nevada law broadly conceptualizes "deceptive trade practice" and includes over 16 primary definitions of the term. See generally NRS § 598.0900 et seq.  Plaintiffs allege that Defendant committed seven different violations of Nevada's Deceptive Trade Practices Act. In part, they allege Defendant "knowingly [made] a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith[;]" that he "disparage[d] the goods, services, or business of another person by false or misleading representation of fact[;]" and that he "violated a state or federal statute or regulation relating to the sale or lease of goods or services." NRS § 598.0915(5), (8); NRS § 598.0923(1)(b).

Mr. Acres argues that patent issues are "necessarily" raised here, because Plaintiffs continually allege infringement of the '263 patent, which is a legal determination involving patent law. Specifically, Mr. Acres argues that whichever court reviewing Plaintiffs' Deceptive Trade Practices Act claims must also determine whether Foundation™ infringes the '263 patent and whether Mr. Acres is prohibited from challenging the validity of the '263 patent.  Plaintiffs argue the core "deception" alleged is Mr. Acres' practice of agreeing to do everything possible in support of an invention while simultaneously seeking to declare the associated patent unenforceable. Therefore, whether the Court finds Mr. Acres infringed the '263 patent—a question to be addressed in the currently stayed matter before Judge Navarro—the issue in this case is separate and does not necessarily require a determination of federal law.

The Ninth Circuit has held that this very statutory scheme does not *per se* trigger federal question jurisdiction because the statute's "glancing reference to federal law is insufficient to confer jurisdiction over Nevada[] state law claims." Nevada v. Bank of Am. Corp., 672 F.3d 661, 675 (9th Cir. 2012).  Even with respect to Plaintiffs' other claims under Nevada's Deceptive Trade

12

1   Practices Act, the Court finds that a federal claim is not necessarily raised, since the deception that

2   Plaintiffs allege relate to Mr. Acres' alleged business model of (1) assigning rights to intellectual

3   property, (2) promising to help secure or protect those rights, and (3) later undermining these

4   promises by creating competing goods. The Court does not find that the determination of whether

5   or not Nevada's Deceptive Trade Practices Act was violated in this case does not turn on whether

6   or not '263 patent is valid or was infringed. Therefore, there is no federal issue necessarily raised

7   as to this claim.

8                              **B. Remaining <u>Grable</u> Factors**

9        The Court next considers the remaining <u>Grable</u> factors. While it is true that the parties

10  genuinely dispute whether the '263 patent is valid, and whether Mr. Acres' conduct constitutes

11  patent infringement, these disputes are not "substantial in the relevant sense." <u>Gunn</u>, 568 U.S. at

12  260.  As the Supreme Court noted in <u>Gunn</u>, the substantiality requirement "looks . . . to the

13  importance of the issue to the federal system as a whole." <u>Id</u>. at 259-60.  In that case, whether a

14  patent law argument would have changed the result in a prior infringement action was critical to

15  establishing a legal malpractice claim; this, however, was a hypothetical and backwards looking

16  federal issue, that, when resolved, would not have "broader significance" in terms of its application

17  to other cases or federal interest. <u>Id</u>. at 261-62.  Thus, even though the patent issues involved in

18  the case were "vitally important" to the parties, to confer jurisdiction, "something more,

19  demonstrating that the question is significant to the federal system as a whole, is needed." <u>Id</u>. at

20  263-64.

21       Here, the outcome of the state law claims will not alter the *status* of the '263 patent. The

22  state law claims are based on contracts creating obligations beyond and outside of the scope of

23  patentability, regardless of what Mr. Acres believed to be patentable and requiring Mr. Acres to

24  protect the "intellectual property" "in every possible way."  Mr. Acres might be correct that the

25  resolution of the Federal Court case may affect the scope of damages in the state court action.

26  However, this is a far cry from meeting the substantiality requirement under <u>Grable</u> and <u>Gunn.</u>

27       Finally, in the absence of a substantial federal issue, "<u>Grable</u>'s fourth requirement

28  [regarding the appropriate balance between federal and state judicial responsibilities] is also not

                                             13

met." <u>Id</u> at 264. Because Mr. Acres cannot satisfy all four requirements of "arising under" jurisdiction, this Court does not have subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1338(a).

## VI.     CONCLUSION

**IT IS ORDERED** that Plaintiffs' Motion to Remand (ECF No. 10) is GRANTED.  The case is REMANDED to the Eighth Judicial District Court.

The Clerk of Court is instructed to close the case.

DATED: September 25, 2023.

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**